UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MELANIE APRIL HILL, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-30018-KPN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
|     Defendant | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION TO
AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 8 and 10)
November 15, 2012

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1381(c)(3). Melanie April Hill ("Plaintiff") asserts that the Commissioner's decision denying her such benefits -- memorialized in a October 19, 2011 decision of an administrative law judge -- is not supported by substantial evidence. She has filed a motion to reverse the decision and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will allow the Commissioner's

1

motion to affirm and deny Plaintiff's motion to reverse.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. § 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. § 1383(c)(3).

II. BACKGROUND

On March 16, 2010, Plaintiff filed for SSI benefits. (Administrative Record ("A.R.") at 53.) Plaintiff claimed that she was disabled due to back pain and certain psychological disorders. (Id. at 55.) After her claim was denied both initially and upon reconsideration, she requested a hearing in front of an administrative law judge ("ALJ"), which occurred on September 22, 2011. (Id. at 53.)

Plaintiff, thirty-six years old at the time of the hearing, has a ninth grade education and previously worked as an assembler, cashier, and cashier/ food server. (A.R. at 14, 16, and 151-52.) At the hearing, Plaintiff testified that she suffers from asthma, depression, anxiety, and back pain resulting from a spinal condition. (A.R. at 16-20.)

In a decision dated October 19, 2011, the ALJ denied Plaintiff's claim. (A.R. at 53-70.) The ALJ found that Plaintiff had not been disabled within the meaning of the Social Security Act (the "Act") since March 16, 2010. (Id.) Although the ALJ determined that Plaintiff suffered from several "severe" impairments, she ultimately decided that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with some limitations. (Id. at 57.) The ALJ also found that Plaintiff could perform her past relevant work as a cashier and, in addition, work as a ticket seller and ticket taker, all of which are jobs that exist in the national economy. (Id.)

Plaintiff requested review of the ALJ's decision by the Commissioner's Appeals Council on October 28, 2011. On November 30, 2011, the Appeals Council denied

Plaintiff's request. (*Id*. at. 1-3.) In due course, Plaintiff filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions presently at issue.

### III. DISCUSSION

An individual is entitled to SSI benefits if she is under a disability and is needy. *See* 42 U.S.C. § 1381a. Plaintiff's need is not challenged.

A. Disability Standard and the ALJ's Decision

The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act:

> only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If [she] is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which

>significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If [she] does not have an impairment of at least this degree of severity, [she] is automatically not disabled.
>
>Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
>   . . . .
>
>Fourth . . . does the claimant's impairment prevent [her] from performing work of the sort [she] has done in the past? If not, [she] is not disabled. If so, the agency asks the fifth question.
>
>Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy? If so [she] is disabled; if not [she] is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff has not engaged in substantial gainful activity since her application date (question one); Plaintiff has impairments which are "severe," specifically degenerative disc disease to the lumbar spine, spondylolisthesis, L5-S1 foraminal stenosis, status post-decompression and fusion surgery, lumbar radicular syndrome, asthma, obesity, generalized anxiety disorder, and mood disorder, but those impairments do not meet or medically equal one of the listed impairments in Appendix 1 (questions two and three); and, Plaintiff has the residual functional capacity to perform past relevant work as a cashier, as well as jobs that exist in significant numbers in the national economy (questions four and five). Therefore, the ALJ determined, Plaintiff was not entitled to

SSI benefits. (A.R. at 68-70.)

B. <u>Plaintiff's Challenge to the ALJ's Decision</u>

Plaintiff argues that the ALJ erred in failing to (1) give great weight to her treating source's opinion and (2) incorporate appropriate mental health limitations in her residual functional capacity determination. The Commissioner responds that the ALJ's opinion is based on substantial evidence. For the reasons which follow, the court finds the Commissioner's argument more persuasive.

1. <u>The Treating Physician's Opinion</u>

Plaintiff argues that the ALJ should have given controlling weight - - rather than no weight - - to a note from her treating physician, Marc A. Linson, M.D. The Commissioner disagrees, arguing that the ALJ properly gave the treating physician's opinion no weight because it was unsupported by objective medical evidence and inconsistent with the doctor's own medical notes.

The term "treating physician" is defined in the regulations as any physician who "has provided [the claimant] with medical treatment or evaluation and who has or has had an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902. While the Social Security Administration's Regulations instruct an administrative law judge to give more weight to a treating source's opinion when it is well-supported by medical evidence, *see* 20 C.F.R. § 416.927(c)(2), such weight is not to be accorded to opinions that are internally inconsistent or inconsistent with other evidence in the record. *See Arruda v. Barnhart*, 314 F.Supp.2d 52, 72 (D. Mass. 2004). An administrative law judge, moreover, need not adopt a treating physician's opinion on the issue of

6

disability, the ultimate determination of which is reserved to the administrative law judge. 20 C.F.R. § 416.927(d)(1).

The ALJ declined to give Dr. Linson's opinion any weight for a variety of reasons. As an initial matter, the ALJ noted that the "opinion" was actually a note Dr. Linson wrote in May of 2011 to excuse Plaintiff from jury duty. In its entirety, the note reads: "Ms. Hill suffers from a spinal condition. She cannot sit for prolonged periods of time. Due to this medical condition she is disabled and cannot perform jury duty for the next year." (A.R. 705.) As such, the ALJ read the note as an accommodation to Plaintiff rather than a medical opinion for purposes of a disability determination. (A.R. 61.) The ALJ explained that the note was unaccompanied by any "evidence that Dr. Linson conducted a physical examination to test the claimant's ability to engage in exertional activities or stooping, bending, lifting, sitting, and so forth prior to writing [the] note." (A.R. 61.) In addition, the ALJ explained that Dr. Linson's determination that Plaintiff was disabled was inconsistent with his opinion, shortly after Plaintiff's surgery in September of 2010, that Plaintiff could engage in "light to moderate activity." (A.R. 61, 519.) Similarly, Dr. Linson's own treatment notes consistently refuted his determination that Plaintiff was disabled; as recently as April of 2011, Dr. Linson had indicated that, although Plaintiff continued to have lower back pain, she was in much less discomfort and was advised to cut down on her use of pain medication and engage in light activity. (A.R. 63, 556.)

The ALJ also declined to give Dr. Linson's note controlling weight because it was inconsistent with other medical evidence on the record. For example, on April 29,

2011, Plaintiff was evaluated by Poorna Manikantan, M.D., who noted that Plaintiff reported that "pain used to be radiating down the lower extremities bilaterally, but this has resolved primar[ily] with the surgery" and indicated that Plaintiff was able to perform activities such as bathing, feeding, dressing, and toileting independently. Dr. Manikantan also advised Plaintiff against bed rest for longer than four days and recommended that she continue normal daily activities as tolerated. (A.R. 63, 564-65.) Similarly, the ALJ's decision was supported by the report of Scott Cowan, M.D., who evaluated Plaintiff on August 23, 2011, and opined that Plaintiff

> is a well-appearing female in no acute distress. She rises from a seated position without difficulty. Range of motion of the back is 60% of normal. Back is nontender to palpation without step off or deformity. No overlying skin changes. Hip and knee range of motion is full. Seated straight leg raise is negative.

(A.R. 708.) Dr. Cowan also noted that an "EMG performed on Dec. 22, 2010 is notable for unremarkable findings" and ultimately concluded that he "really [did] not see any role for operative care." (Id.)

The court notes that certain commentary by the ALJ - - speculating that health care providers are sometimes inclined to assist patients in applications for disability benefits out of sympathy - - was unnecessary and unhelpful to the determination of disability in the present case. Such comments aside, however, it is clear that the ALJ's decision to give no weight to Dr. Linson's note excusing Plaintiff from jury duty was appropriate for the reasons explained above.

    2. <u>The ALJ's Evaluation of Plaintiff's Mental Limitations</u>

Plaintiff next claims that the ALJ's residual functional capacity determination failed to take into account certain mental limitations. Plaintiff argues, generally, that her medical records indicate that she has mental health impairments that would significantly reduce her residual functional capacity, although she does not articulate which mental limitations were ignored or how, specifically, they could alter the ALJ's determination. The Commissioner, in turn, argues that the ALJ's residual functional capacity determination is based on substantial evidence. Again, the court finds the Commissioner has the stronger argument.

With respect to Plaintiff's mental limitations, the ALJ determined that she had the residual functional capacity to perform unskilled work and could "maintain concentration, persistence, or pace for two-hour blocks of time." (A.R. 57.) In reaching this conclusion, the ALJ considered treatment notes from River Valley Counseling Center, where Plaintiff underwent a Psychopharm Diagnostic Assessment with Sharon Hinton, APRN, on May 5, 2010. (A.R. 287-88.) Nurse Hinton reported that Plaintiff had normal speech and appearance, good eye contact, and was oriented and attentive. (Id.) While Plaintiff had moderate depressive symptoms and reported difficulty falling asleep, her thought content and process were both normal and she was assigned a Global Assessment of Functioning (GAF) score of 55. (Id.)[1] The ALJ assigned some weight to Nurse Hinton's opinion and observations, noting that they were not

---

[1] A GAF score in the 51-60 range indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

inconsistent with Plaintiff's residual functional capacity.

The ALJ also considered treatment notes from Sharlene Hernandez, APRN, who treated Plaintiff from June of 2010 until July of 2011. During that time, Nurse Hernandez repeatedly assessed Plaintiff as having mild to moderate symptoms of depression and anxiety and consistently noted that Plaintiff was oriented, attentive, and had full range affect. (A.R. 440-441, 436-37, 468-492.) While, in February of 2011, Plaintiff was reported to have severe depressive and moderate anxiety symptoms, she was still oriented and attentive with fair judgment and insight and good concentration. (A.R. 579.) By March of 2011, Plaintiff reportedly had moderate symptoms of depression and only mild to moderate symptoms of anxiety, although she continued to have difficulty falling asleep. (A.R. 574.) The ALJ also explained that treatment notes through July of 2011 depicted a similar situation, with Plaintiff demonstrating good eye contact, orientation, attentiveness, insight, and judgment and reporting only mild to moderate symptoms of depression and anxiety. (A.R. 691-95.)

In addition, the ALJ considered the opinion of Robert Sampson M.D., who completed a consultative examination of Plaintiff and reported that her thought was logical and goal directed without evidence of hallucinations or delusions. (A.R. 402-08.) While Plaintiff indicated symptoms of anxiety, she scored 28 out of 30 on the Mini Mental Status Examination and was able to understand, remember, and follow simple instructions. (Id.) The ALJ also took note of Dr. Sampson's opinion that Plaintiff's psychiatric conditions were fair with treatment and likely predicated on her back condition. (Id.)

In sum, the ALJ's residual functional capacity determination considered all available medical evidence relating to Plaintiff's mental conditions and incorporated appropriate limitations based on those conditions.  While Plaintiff argues that the ALJ should have assessed Plaintiff with more severe limitations based on the medical record, it is left to an administrative law judge to resolve conflicts in evidence and, where such determinations are supported by the record, they are to be affirmed.  *See Irlanda Ortiz*, 955 F.2d at 769 (even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

## IV.  CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings is DENIED and the Commissioner's motion to affirm is ALLOWED.

DATED:   November 15, 2012

       /s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge